IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| A.Y.,<br><br>     Plaintiff,<br><br>          v.<br><br>COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,<br><br>     Defendant. | Civil No. 20-08590 (RMB)<br><br>**OPINION** |

**BUMB**, United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff from a denial of social security disability benefits.

For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge ("ALJ") and remands for proceedings consistent with this Opinion's reasoning.

**I.     STANDARD OF REVIEW**

When reviewing a final decision of an ALJ with regard to disability benefits, the Court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." 42 U.S.C. § 405(g); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "Substantial evidence" means "'more than a mere scintilla' or "such relevant evidence as a reasonable mind might accept as adequate." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938));

*Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the Court must determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *see also Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states the following:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i-v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.

At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019).

II.     **FACTS**

The Court recites herein only the facts that are necessary to its determination on appeal. Plaintiff was 24 years old on the alleged onset date, and claims disability, in part, arising from schizoaffective disorder, anxiety, bipolar disorder, panic disorder, back pain, and herniated disc. Tr. 258.

In support of her claim for social security benefits, Plaintiff provides numerous medical records from her treating physicians and health care providers, dated from July 2002 through March 2019, documenting Plaintiff's in-patient, out-patient, and emergency medical treatment services provided by many regional hospitals and other health care facilities, including South Jersey Behavioral Health, Hampton Counseling Center, Kennedy Health System, Virtua Family Medicine, Virtua Memorial Hospital, and Oaks Integrated Care. The record also includes the findings of consultative examiners Barry Kardos, Ph.D. (Psychology) and Thomas Woloszyn, M.D (Internal Medicine).

III.    **ALJ'S DETERMINATION**

The ALJ found Plaintiff not disabled for purposes of social security benefits. At Step Two of the analysis, the ALJ found that Plaintiff had the following "severe" impairments, each of which significantly limit her ability to perform basic work activities: obesity, status-post ventral hernia with repair, gastroesophageal reflux disease ("GERD"), chronic schizoaffective disorder bipolar type, post-traumatic stress disorder ("PTSD"), alcohol abuse disorder, and major depressive disorder.

With respect to Plaintiff's alleged back pain and spinal problems, the ALJ determined that Plaintiff's impairment was not "severe," citing clinical findings of unremarkable lumbar spine imaging, physical examinations showing normal motor sensory, normal range of motion, and no numbness or tingling.  Tr. 18.

At Step Three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of the listed impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  The ALJ determined that because the record includes no evidence of upper gastrointestinal hemorrhage, stricture/stenosis/obstruction of the esophagus, peptic ulcer disease, or chronic liver disease, Plaintiff's GERD failed to meet or medially equal a listed impairment that would establish disability for purposes of social security.  *Id.*  With respect to Plaintiff's mental impairments, the ALJ then considered both the "Paragraph B" and "Paragraph C" criteria at Step Three.

The ALJ considered each of the four "Paragraph B" criteria.  First, the ALJ determined that Plaintiff has a mild limitation in understanding, remembering, or applying information.  *Id.*  The ALJ acknowledged Plaintiff's hearing testimony that she had difficulty remembering things generally, but also noted that she has taken college level courses, prepares meals, goes to her doctors' appointments, and takes her medication, as well as the fact that she can communicate her conditions to her doctors, explain her prior work history (as she did at the hearing before the ALJ), and generally follows instructions from her health care providers and takes her

medication. Tr. At 18-19. Second, the ALJ found that Plaintiff has a moderate limitation in interacting with others, noting that although Plaintiff testified to having paranoia and anxiety when in crowds and difficulty socializing, she is able to get along with others, spend time with her friends and family, go to group therapy, and have positive interactions with staff at her doctors' appointments. Tr. 19. Third, the ALJ determined that Plaintiff's limitation in her ability to concentrate, persist, or maintain pace was moderate. *Id.* The ALJ explained that Plaintiff was able to obtain an associate degree and take upper-level college courses, watch TV, and handle her own medical care. *Id.* Lastly, the ALJ found that Plaintiff had a mild limitation in her ability to adapt or manage herself, again noting her positive interactions with staff at her doctors' appointments, ability to groom herself and handle her self-care, and take care of her daughter. *Id.*

The ALJ then considered the "Paragraph C" criteria regarding Plaintiff's mental health impairments, which require an individual to demonstrate a medically documented history of mental disorder lasting for at least two years, as well as reliance on medical treatment, therapy, psychosocial support, or a highly structured setting to diminish the symptoms thereof. *Id.* While the ALJ was able to conclude that Plaintiff's mental health disorders have persisted for more than two years, he found that the evidence "fails to show that the claimant has achieved only marginal adjustment," noting that Plaintiff could take college classes, go to doctors' appointments, and take care of her personal needs. *Id.* Thus, the ALJ determined

that the "Paragraph C" criteria were not satisfied.

      The ALJ then moved on to Step Four and determined Plaintiff's residual functional capacity ("RFC") assessment to be as follows:

> The claimant has the residual functional capacity to perform light work. . . except the claimant can understand, remember, and carry out simple instructions, simple repetitive tasks, simple decisions in the workplace, occasionally adjusts to changes in workplace routines, does not drive, does not operate dangerous machinery (any machinery that cuts, tears, shears, crushes, or punctures). The claimant can maintain frequent contact with supervisors, work in proximity to coworkers, but not do tandem work, and never with the public. The Claimant requires one (1) day unscheduled absence per month, and will be 10 percent off-task in an 8-hour day in addition to breaks (15 minutes each morning and afternoon, 30 minutes for lunch).

Tr. 20. The ALJ discussed Plaintiff's mental health impairments and resulting symptoms, noting a history of trauma since childhood, panic and anxiety around crowds, crying spells, difficulty controlling her temper, paranoia, and auditory and visual hallucinations, among others. *Id.* The ALJ acknowledged that Plaintiff's schizophrenia and amphetamine abuse had caused her to become hospitalized in April 2012 and then again in December 2012, first for suicidal ideation and auditory hallucinations and then for depression and anxiety. Tr. 21.

      The ALJ's found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not consistent with the record and drew a distinction to support this finding: normal levels of functioning occurred during "periods of medication compliance," while Plaintiff experienced an "exacerbation of symptoms correspond[ing] to specific external triggers including her brother's murder, financial stress, relationship stress, and housing instability," during which

Plaintiff was noncompliant with medication treatment.  Tr. 22.

Further discussing the RFC assessment, the ALJ gave the opinion of consultative examiner Barry Kardos, Ph.D. little weight because the opinion is "vague and internally inconsistent on its face. . .[and] lack[s] internal substantiation."  *Id.*  The ALJ points out, for example, that Dr. Kardos contradicted himself in his opinion as to whether Plaintiff can follow two-step instructions.  *Id.*  The ALJ gave moderate weight to the opinion of consultative examiner Dr. Thomas Wolosyzn that claimant's lumbago is likely secondary to obesity and that the majority of her disability is secondary to psychological issue.  *Id.*  Finally, the ALJ gave the RFC assessments by Cyril Modestus, Dr. Isabella Rampello, and Leslie Williams little weight since their findings were not entirely consistent with the record and because the evaluators did not examine the Plaintiff or base their opinions on the most recent evidence.  Tr. 22-23.

The ALJ found at Step Four that Plaintiff was unable to perform any past relevant work, but then, at Step Five, found that other jobs exist in the national economy that she can perform, namely as a routing clerk, marker, or mail clerk.  Thus, the ALJ concluded that Plaintiff was not disabled for the purposes of social security benefits.

### IV.     ANALYSIS

On appeal, Plaintiff asserts that three of the ALJ's findings, in particular, were not supported by substantial evidence:  (1) the ALJ's Step Three finding that her

condition was not of a severity that met the "Listings of Impairments" under 20 C.F.R. Part 404, subpart P, Appendix 1, specifically because her mental impairments constitute a disability under the "Paragraph B" factors; (2) the ALJ's RFC assessment at Step Four; and (3) the ALJ's decision that she could engage in alternative work at Step Five.

### a.     The "Listings of Impairments" at Step Three and the "Paragraph B" Factors

The Court notes at the outset that the "Paragraph B" factors for evaluating mental impairments are relevant for the ALJ to consider at two steps of the larger five-step disability analysis: at Step Two, the Paragraph B factors are relevant in determining whether an impairment is "severe," and, if so, become relevant again at Step Three in determining whether the claimant has a listed impairment that would establish a disability and end the inquiry.  20 C.F.R. § 404.1520a(d); 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00.  Here, the ALJ concluded at Step Two that Plaintiff had several "severe" mental health impairments, including chronic schizoaffective disorder bipolar type, PTSD, and major depressive disorder.  Tr. 17.  The ALJ did not discuss the "Paragraph B" factors at Step Two, but stated that the "extent to which they limit the claimant's ability to perform basic work activity" would be discussed at Step Three.  *Id.*  However, at Step Three, where the ALJ did consider the "Paragraph B" factors, he found that they had not been met – finding that Plaintiff had only mild limitations in two functional areas and moderate limitations

in the other two functional areas. Tr. 18-19. Thus, the ALJ's findings with respect to which of Plaintiff's mental impairments qualified as "severe" and the ALJ's findings with respect to the "Paragraph B" factors are not consistent, and thus, the Court agrees with Plaintiff that the ALJ's "Paragraph B" findings are not supported by substantial evidence.

The ALJ also did not discuss the impact of Plaintiff's "severe" mental impairments and resulting symptoms when considering the "Paragraph B" factors at Step Three. Plaintiff argues that the record contains ample evidence of her long history of mental illnesses and how such illnesses manifest. Plaintiff's Brief at 17-23. In response, the Commissioner points out that the ALJ, in considering each of the "Paragraph B" factors in turn, explained his findings by noting with respect to each factor that there are certain tasks that Plaintiff is still capable of doing. Commissioner's Brief at 9-12. The Court finds that by not weighing the medical and non-medical evidence of Plaintiff's mental health symptoms when considering the relevant "Paragraph B" factors, even if Plaintiff could perform certain relevant tasks, the ALJ further erred such that the "Paragraph B" analysis is not only inconsistent with his Step Two findings of "severe" impairment, but also unsupported in light of the record as a whole.

Indeed, the record contains a considerable amount of medical evidence documenting Plaintiff's mental health impairments, and in her supporting brief, Plaintiff highlights various inpatient hospitalizations and emergency room visits

because of visual and auditory hallucinations, panic attacks, and suicidal ideation, among other serious symptoms. Plaintiff's Brief at 18 (citations omitted). The Commissioner contends that Plaintiff has exacerbated the severity of her symptoms, and that these periods of hospitalization for mental health treatment were infrequent and are not good indicators of her overall state. Commissioner's Brief at 12. Regardless, the ALJ is required to consider and weigh such symptoms in his analysis, and if he concludes their effects have been exacerbated, explain why.

      The Court is not persuaded that the ALJ's conclusions regarding the degree of Plaintiff's limitations in the four areas contemplated by the "Paragraph B" factors are ones that a reasonable mind could accept as adequate. The Commissioner is correct that the ALJ's decision "need not discuss every tidbit of evidence in the record," but the ALJ must "ensure that there is a sufficient development of the record and explanation of findings to permit meaningful review." Commissioner's Brief at 12 (citing *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ must also consider all the evidence before him as relevant in the larger five-step, sequential analysis, and as Plaintiff points out, when discrediting pertinent evidence in the record, the ALJ "must give some reason for discounting the evidence that is rejected." Plaintiff's Brief at 22 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). Here, the ALJ's rationale for each finding related to the Paragraph B factors is categorically the same: Plaintiff is still capable of doing certain activities, so she is not more limited in the relevant functional areas

by her "severe" mental health impairments. This rationale is not consistent with the evidence in the record and thus, is not supported by substantial evidence.

On remand, the ALJ shall reexamine each of the "Paragraph B" factors. In analyzing each of the "Paragraph B" factors, the ALJ shall expressly weigh the evidence of Plaintiff's mental health illnesses and resulting symptoms, and determine how such evidence impacts the degree of functional limitation with respect to each of the "Paragraph B" factors (or why such evidence should be discredited and/or is outweighed by other evidence). The ALJ shall also explain, on remand, how the "Paragraph B" findings (i.e., whether Plaintiff has mild, moderate, marked, extreme, or no limitations with respect to each of the four functional areas) are consistent with the Step Two findings (i.e., which of Plaintiff's mental health impairments significantly limit Plaintiff's ability to perform basic work activities and are thus "severe").

  b. **Plaintiff's RFC Assessment at Step Four**

Plaintiff's second argument is that the ALJ's RFC assessment is not supported by substantial evidence because it fails to adequately account for her obesity and mental health disorders, and that the ALJ erred in attributing little weight to the opinion of consultative examiner Dr. Kardos.

In support of the RFC assessment, the ALJ stated in his decision that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence on the record, and

drew a distinction between "periods of medication compliance" and periods of non-compliance when her symptoms would become exacerbated, and that periods of noncompliance also correspond to external triggers like financial distress, housing distress, and the tragic murder of her brother. Tr. 21. However, the Court finds that the ALJ's overarching rationale fails to provide an adequate or rational explanation of the RFC assessment, especially in light of the ALJ's findings at Step Two as to which of Plaintiff's impairments were "severe." Thus, the RFC assessment is not supported by substantial evidence.

Nowhere in the RFC assessment does the ALJ explain how the specific limitations take into account Plaintiff's individual impairments. For example, Plaintiff alleges that the RFC assessment finds her capable of "light" work, which may require her to be on her feet for most of the workday and lift up to 20 pounds. Plaintiff's Brief at 26. Plaintiff argues that the ALJ failed to consider that due to her obesity, which is considered to be morbid obesity and is more limiting, she can only walk a few feet, as well as experiences intense pain and weakness. *Id.* Similarly, the Court finds no explanation in the RFC assessment as to how the specific limitations included – that she can maintain frequent contact with supervisors, work in proximity of coworkers, but never with the public – adequately account for Plaintiff's various mental disorders, including those the ALJ determined were "severe" and the resulting symptoms thereof, like visual and auditory hallucinations, temper control problems, and depressed and anxious mood. Tr. 21. On the other hand, the Court

finds that the ALJ did include an adequate explanation as to why he attributed Dr. Kardos opinion little weight – Dr. Kardos' report was "internally inconsistent on its face," "lack[ed] internal substantiation," were not consistent with other evidence in the record, and were vague and ambivalent "as all findings are described as 'possibly' or 'likely.'" Tr. 22.

On remand, the ALJ shall explain how the RFC assessment at Step Four is consistent with and adequately takes into the account Plaintiff's "severe" impairments and their resulting symptoms, including Plaintiff's obesity, chronic schizoaffective disorder bipolar type, post-traumatic stress disorder ("PTSD"), and major depressive disorder.

  c. **<u>Alternative Work at Step Five</u>**

Lastly, Plaintiff argues that the ALJ's decision at Step Five – that she could not return to her past work but could engage in other work as a routing clerk, marker, or mail clerk – is not supported by substantial evidence because this conclusion was based on an incomplete RFC assessment. Plaintiff's Brief at 28-29. The Court agrees with the Commissioner that Plaintiff's third argument does not warrant a separate consideration and essentially rehashes Plaintiff's challenge to the RFC assessment. On remand, the ALJ is already required to consider whether any subsequent steps in the evaluation must be revisited in light of new or different findings. Thus, Plaintiff's third argument fails.

V.  **CONCLUSION**

The Court concludes that remand, as opposed to reversal, is appropriate. On remand, consistent with the Court's Opinion, the ALJ shall reexamine each of the "Paragraph B" factors and explain how the evidence in the record, including that of Plaintiff's mental health illnesses and resulting symptoms, impact each of the functional areas relevant to the four "Paragraph B" factors. The ALJ shall also reexamine the RFC assessment and explain how the assessment accounts for Plaintiff's impairments and resulting symptoms, including obesity, chronic schizoaffective disorder bipolar type, post-traumatic stress disorder ("PTSD"), and major depressive disorder. In discussing both the "Paragraph B" factors and RFC assessment on remand, the ALJ shall also explain how such findings are consistent with the findings at Step Two regarding which of Plaintiff's impairments are "severe." The ALJ may very well reach the same conclusion on remand, but the ALJ's consideration of the foregoing issues will provide a sufficient development of the record and permit meaningful review by the Court, if necessary.

For the foregoing reasons, the Court **vacates** the decision of the ALJ and **remands** for proceedings consistent with the above analysis.

An accompanying Order shall follow.

Date: November 10, 2021                     s/Renée Marie Bumb
                                            Renée Marie Bumb
                                            U.S. District Judge